J-S43038-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| FRANCIS A. STRAUGHTERS, JR. | : | |
| | : | |
| Appellant | : | No. 199 WDA 2018 |

Appeal from the Judgment of Sentence January 8, 2018
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0000423-2012

BEFORE: STABILE, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.: **FILED AUGUST 16, 2018**

Appellant Francis A. Straughters, Jr. appeals from the amended judgment of sentence imposed following his convictions for robbery, conspiracy, aggravated assault, simple assault, reckless endangerment, terroristic threats, theft by unlawful taking, receiving stolen property, and disorderly conduct.[1] Appellant's counsel (Counsel) has filed a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and its Pennsylvania counterpart, **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). We affirm and grant Counsel's petition to withdraw.

We set forth the facts of this case as follows:

During the night of February 3, 2012, Appellant and [co-conspirator Edith Marie] Porterfield smoked crack cocaine at their apartment on East Green Street, Connellsville. Their drug dealer

_____

[1] 18 Pa.C.S. §§ 3701(a)(1)(i), 903, 2702(a)(4), 2701, 2705, 2706, 3921, 3925, and 5503, respectively.

had refused to give them any more drugs on credit so, after consuming all the crack cocaine in their possession, they decided to obtain money by criminal means in order to purchase the drug. First, the two cohorts went to the home of Porterfield's mother, stole about $150, purchased more crack cocaine, and returned to their apartment to consume it.

Appellant and Porterfield then decided to rob a store to obtain more funds. To that end, they started to drive around Connellsville consuming their remaining crack cocaine. At around 4:00 a.m. on February 4, 2012, they went to a gas station known as the Honey Bear Sunoco, which was located on Memorial Boulevard in Connellsville. Porterfield entered that business wearing sunglasses and a white-hooded sweatshirt. She tried to open the cash register and demanded money from the store clerk, who denied her access to the register. In response, Porterfield threatened to shoot the clerk and left the gas station.

After that unsuccessful attempt to gain money for drugs, at around 6:00 a.m. on February 4, 2012, Appellant and Porterfield robbed the Reddy Mart Gas Station ("Reddy Mart"), which also was located on Memorial Boulevard, Connellsville. Porterfield operated as a lookout and the getaway driver. She entered the establishment, purchased coffee, and left the Reddy Mart. During her stay, she spoke briefly with a regular customer, Zane Long. Nancy Miller was the only store employee on duty.

Shortly after Porterfield left Reddy Mart, Appellant entered the convenience store carrying a long-handled crescent wrench. He screamed at Mr. Long that he was robbing the store, struck Mr. Long across the face with the wrench, and pushed him into a utility closet. Appellant then approached Ms. Miller and ordered her to give him the store money and not to summon the police. He stole about $500 in cash and several packs of cigarettes from the Reddy Mart. Next, Appellant returned to the utility closet and struck Mr. Long on the head with the wrench two or three more times. Mr. Long fell onto the ground, where Appellant, who was wearing boots, kicked him three times, including once in the head. Due to his injuries, Mr. Long received nine stiches and seventeen staples at a hospital. Porterfield and Appellant then purchased more crack cocaine with the robbery proceeds.

During the ensuing investigation, Connellsville Police Officer Autumn Fike reviewed Reddy Mart's surveillance footage of the incident, which was played for the jury. When watching the tape,

Officer Fike immediately recognized both Porterfield and Appellant. Porterfield had no facial covering, and a piece of cloth that Appellant used during the crime to cover his mouth and chin continually slid down so that Officer Fike was able to view Appellant's entire visage. Officer Fike obtained a search warrant for Appellant's residence, and, during its execution, she found clothing worn by the perpetrator of the Reddy Mart robbery, including a bloodstained shirt. The shirt was submitted to a crime laboratory for DNA testing. Appellant's DNA was on that item, and the blood on the shirt belonged to Mr. Long.

As Officer Fike was executing the warrant, she saw Appellant outside. She exited the residence to arrest Appellant, but he entered his vehicle and fled the area with Porterfield. After being pursued by a nearby patrol car, Appellant and Porterfield surrendered to police.

Based upon these events, Appellant was convicted of robbery, aggravated assault, simple assault, reckless endangerment, terroristic threats, conspiracy, theft by unlawful taking, theft by receiving stolen property, and disorderly conduct. He was acquitted of two counts of criminal conspiracy that were based upon the attempted robbery of Honey Bear Sunoco.

*See Commonwealth v. Straughters*, 1028 WDA 2015, 1-3 (Pa. Super. filed Jan. 5, 2016) (unpublished mem.), *appeal denied*, 138 A.3d 4 (Pa. 2016).

On September 4, 2012, the trial court sentenced Appellant to 5 to 10 years' incarceration for the robbery conviction and a consecutive 2½ to 5 years' incarceration for the aggravated assault conviction.[2] The aggregate sentence was 7½ to 15 years' incarceration, to run consecutive to Appellant's prior sentence case in CP-26-CR-1771-2011[3] (Case No. 1771). The trial court

_____

[2] The trial court imposed no further punishment for the remaining convictions.

[3] On July 11, 2012, at Case No. 1771, Appellant pled guilty to aggravated assault, simple assault, and harassment. The trial court sentenced Appellant

further stated that Appellant was not eligible for the Recidivism Risk Reduction Incentive (RRRI) program due to his aggravated assault conviction at Case No. 1771. On May 29, 2013, this Court affirmed Appellant's judgment of sentence. Appellant filed a petition for allowance of appeal, which the Pennsylvania Supreme Court denied on December 18, 2013.

On July 31, 2014, the PCRA court docketed Appellant's first PCRA petition. The PCRA court appointed Counsel who filed an amended PCRA petition on November 25, 2014. Following a hearing, the PCRA court denied Appellant's petition on June 5, 2015. This Court affirmed on January 5, 2016, and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on May 10, 2016.

On December 4, 2017, the trial court docketed Appellant's *pro se* petition to recalculate guidelines and correct sentence. In his petition, Appellant alleged that on August 30, 2017, the Commonwealth *nolle prossed* the charges at Case No. 1771 after Appellant filed a PCRA petition in that case. Mot. to Recalculate Guidelines and Correct Sentence, 12/4/17, at 3. He further alleged that his PCRA Counsel in Case No. 1771 failed to inform him of the dismissal of the charges. *Id.* Appellant claimed that this affected the

---

to 22 to 60 months' incarceration on the aggravated assault conviction and imposed no further penalty on the remaining convictions. On August 30, 2017, the trial court vacated Appellant's sentence at Case No. 1771 after Appellant filed a Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, petition in that case.

offense gravity score and prior record score used when calculating his sentence in the instant case and in determining he was not RRRI eligible. *Id.*[4]

On December 13, 2017, the trial court scheduled a re-sentencing hearing.[5] On January 8, 2018, following the resentencing hearing, the trial court amended Count 1—Robbery of Appellant's sentence, providing in relevant part:

> Paragraph 6 is amended as follows: The [c]ourt has determined that the Defendant is NOT eligible for the RRRI Program due to the Possession of Firearms conviction at Fayette County Case Number 596 of 2005.
>
> Paragraph 7 shall read: The Defendant is given credit for time served from February 4, 2012 to September 4, 2012.
>
> Paragraph 8 is RESCINDED as the Aggravated Assault conviction as Case No. 1771 . . . has been vacated.

Am. Sentence, 1/8/18, at Ct. 1 (reordered).[6]

_____

[4] Although Appellant alleged that he exercised due diligence in discovering new facts, the trial court apparently granted re-sentencing relief to correct a patent error based on the developments in Case No. 1771.

[5] We note that while the trial court labeled the hearing as one for re-sentencing, it limited itself to correcting potential errors regarding the calculation of Appellant's PRS and eligibility for the RRRI program. Thus, Appellant could only raise issues as to the calculation of his PRS and his eligibility for the RRRI program. We will address, however, the issues raised by Appellant in his *pro se* response to Counsel's ***Anders***/***Santiago*** brief.

[6] Count 1–Robbery of the original sentence read in relevant part as follows:

> 6. The [c]ourt has determined that the Defendant is NOT eligible for the RRRI Program due to his Aggravated Assault conviction at [Case No. 1771];

The trial court also amended Count 3–Aggravated Assault and provided in relevant part:

Paragraph 3 has previously been omitted per order of September 14, 2012.

Paragraph 6 is RESCINDED as the Aggravated Assault Conviction at Case No. 1771 . . . has been vacated.

***Id.*** at Ct. 3.[7]

Appellant filed a timely notice of appeal and complied with a court-ordered Pa.R.A.P. 1925(b) statement. The trial court filed a responsive opinion pursuant to Pa.R.A.P. 1925(a). Counsel has filed an ***Anders***/***Santiago*** brief and Appellant has filed a *pro se* response. We address Counsel's ***Anders***/***Santiago*** brief first.

Counsel's ***Anders***/***Santiago*** brief identifies the following issues on appeal:

---

7. Defendant us given credit for time served from February 4, 2012 to August 17, 2012;

8. This sentence shall run **consecutive** to [Case No. 1771].

Sentence, 9/4/12, at Ct.1.

[7] Count 3–Aggravated Assault of the original sentence provided in relevant part as follows:

3. Make restitution in the amount of $400.00 to Reddy's Sunoco A Plus;

* * *

6. This sentence shall run **consecutive** to [Case No. 1771].

Sentence, 9/4/12, at Ct.3.

- 6 -

1. Whether the court erred by failing to recalculate [Appellant]'s sentence after [Appellant]'s sentence in Case No. 1771 of 2011 was vacated[.]

2. Whether the court erred in determining that [Appellant] was not eligible for the RRRI program[.]

*Anders*/*Santiago* Brief at 2 (full capitalization omitted).

Because Counsel has filed a petition to withdraw pursuant to *Anders*/*Santiago*, we must first address Counsel's petition before reviewing the merits of the appeal. *Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). To be permitted to withdraw, Counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citation omitted).

Here, Counsel has stated that after a thorough review of the record, he believes this appeal would be wholly frivolous. Pet. to Withdraw, 5/4/18, at ¶ 14. Counsel furnished a copy of the *Anders*/*Santiago* brief to Appellant, as well as a letter advising Appellant of his right to "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal [meaning without legal counsel]; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel." Ltr. to Appellant,

4/16/18. We conclude that Counsel's petition to withdraw complies with the procedural dictates of **Anders**.

We next address whether Counsel's brief meets the requirements established by the Pennsylvania Supreme Court in **Santiago**. The brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.

Here, Counsel's brief provided a summary of the procedural history and the relevant facts with appropriate citations to the record. **Anders**/**Santiago** Brief at 3-4. Counsel's brief states that he conducted a thorough review of the record and determined that any appeal would be frivolous, and set forth his reasons for that conclusion. **Id.** at 5-11, 28. Accordingly, Counsel has substantially complied with the requirements of **Anders** and **Santiago**. We therefore review the issues raised in the **Anders/Santiago** brief.

Counsel first identifies Appellant's claim that the trial court erred by failing to correct Appellant's prior record score (PRS) in the instant case after the sentence at Case No. 1771 had been vacated. **Anders/Santiago** Brief at 5.

As a prefatory matter, "we note that objections to the discretionary aspects of a sentence are waived if they are not raised at the sentencing

hearing or raised in a motion to modify the sentence imposed at that hearing." **Commonwealth v. Anderson**, 830 A.2d 1013, 1016 (Pa. Super. 2003) (citations omitted).

Here, Appellant did not preserve his discretionary sentencing claim at the resentencing hearing or in a subsequent post-sentence motion. Accordingly, Appellant has failed to preserve this claim. **See id.**

Next, Counsel sets forth Appellant's claims that the trial court erred in determining that Appellant was not eligible for the RRRI program.

It is well-settled that "where the trial court fails to make a statutorily required determination regarding a defendant's eligibility for a[] RRRI minimum sentence as required, the sentence is illegal." **Commonwealth v. Robinson**, 7 A.3d 868, 871 (Pa. Super. 2010). Accordingly, because RRRI eligibility "concerns a matter of statutory interpretation and is, thus, a pure question of law, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Chester**, 101 A.3d 56, 60 (Pa. 2014) (citation omitted).

Our Supreme Court has explained that RRRI "seeks to create a program that ensures appropriate punishment for persons who commit crimes, encourages inmate participation in evidence-based programs that reduce the risks of future crime and ensures the openness and accountability of the criminal justice process while ensuring fairness to crime victims." **Id.** at 57 (citing 61 Pa.C.S. § 4502). This program, however, requires the defendant to

meet several requirements. **See** 61 Pa.C.S. § 4503; **see also Chester**, 101 A.3d at 57-58. Of relevance here is one requirement that the defendant:

> [h]as not been subject to a sentence the calculation of which includes an enhancement for the use of a deadly weapon as defined under law or the sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing or the attorney for the Commonwealth has not demonstrated that the **defendant has been found guilty of or was convicted of an offense involving a deadly weapon or offense under 18 Pa.C.S. Ch. 61 (relating to firearms and other dangerous articles)** or the equivalent offense under the laws of the United States or one of its territories or possessions, another state, the District of Columbia, the Commonwealth of Puerto Rico or a foreign nation.

61 Pa.C.S. § 4503 (emphasis added).

In the instant case, Appellant had a 2005 conviction for possession of a firearm with an altered manufacturer's number, 18 Pa.C.S. § 6110.2(a). **See** N.T., 1/8/18, at 8. Further, the trial court fully explained to Appellant why he was not eligible for RRRI at the resentencing hearing. **See id.** at 9-10. Thus, because Appellant's 2005 conviction involving a firearm is an enumerated offense under chapter 61 of the Crimes Code, the trial court correctly held that Appellant does not qualify as an eligible offender. **See** 61 Pa.C.S. § 4503.

Next, we address the two additional issues Appellant has raised in his *pro se* response. First, Appellant challenges the discretionary aspects of his sentence. More specifically, he claims that (1) the trial court imposed a harsh sentence because it ordered that the sentences be consecutive; (2) the sentence is excessive because the prior criminal case was vacated; and (3)

the trial court did not state sufficient reasons on the record. Appellant's Reply Brief to Counsel's Pet. to Withdraw, 6/12/18, at ¶¶ 2-4.

As discussed above, Appellant did not file a post-sentence motion or preserve any discretionary sentencing claims at the re-sentencing hearing. Accordingly, Appellant has waived these claims. **See Anderson**, 830 A.2d at 1016.

Second, Appellant claims that "there may be an issue of merger to the two offenses, where 'inchoate crimes merge only when directed to the commission of the same crime, not merely because they arise out of the same incident.'"[8] Appellant's Reply Brief to Counsel's Pet. to Withdraw, 6/12/18, at ¶ 3 (citing **Commonwealth v. Graves**, 508 A.2d 1198 (Pa. 1986) (*per curiam*)).

Initially, we note that whether convictions merge for sentencing purposes involves the legality of a sentence. **Commonwealth v. Baldwin**, 985 A.2d 830, 833 (Pa. 2009). Thus, our standard of review is *de novo* and our scope of review is plenary. **Id.** (citation omitted).

Section 9765 provides that:

[n]o crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

---

[8] Although Appellant does not specify the two offenses at issue, it is clear he is referring to robbery and aggravated assault, as these were the only convictions for which the trial court sentenced Appellant.

42 Pa.C.S. § 9765.

> Regarding robbery and aggravated assault, we have explained that

> it is clear that aggravated assault under § 2702(a)(1) requires an element that § 3701(a)(1)(i) robbery does not: namely, that the perpetrator act with a specific mental state when causing the "serious bodily injury."  As § 2702(a)(1) declares, before an individual may be convicted of aggravated assault, that individual must "cause . . . serious bodily injury to another . . . intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."  18 Pa.C.S. § 2702(a)(1). 18 Pa.C.S. § 3701(a)(1)(i) simply does not require such a mental state when the "serious bodily injury" is inflicted.  For robbery, it is enough that the perpetrator "**inflicts** serious bodily injury upon another" while "in the course of committing a theft."  18 Pa.C.S. § 3701(a)(1)(i) (emphasis added).

*Commonwealth v. Payne*, 868 A.2d 1257, 1263 (Pa. Super. 2005) (emphasis omitted).

Although *Payne* discusses aggravated assault as defined in section 2702(a)(1) and, here, Appellant was convicted of aggravated assault under section 2702(a)(4), the underlying reasoning is the same.  Section 2702(a)(4) requires a defendant to intend to cause or knowingly cause bodily injury with a deadly weapon, while section 3701(a)(1)(i) requires the infliction of serious bodily injury in the course of committing the theft.  *See* 18 Pa.C.S. §§ 2702(a)(4), 3701(a)(1)(i).  Therefore, because aggravated assault under subsection (a)(4) and robbery under subsection(a)(1) each have at least one element that other does not, these convictions do not merge for sentencing purposes.  *See Payne*, 868 A.2d at 1263.

Finally, our independent review of the record does not reveal any other non-frivolous issues.

Petition to withdraw granted. Judgment of sentence affirmed. Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/16/2018